O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LISA LINNETTE BANTA,                )    Case No. EDCV 11-1302 JPR
                                    )
                Plaintiff,          )    MEMORANDUM OPINION AND ORDER
                                    )    AFFIRMING THE COMMISSIONER
        v.                          )    AND DISMISSING ACTION
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security,                           )
                                    )
                Defendant.          )
_____ )

I.   PROCEEDINGS

     Plaintiff seeks review of the Commissioner's final decision

denying her application for Social Security Disability Insurance

Benefits ("DIB") under her account number and Widow's Insurance

Benefits ("WIB") under her deceased husband's account number.

The parties consented to the jurisdiction of the undersigned U.S.

Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties

filed a Joint Stipulation on May 15, 2012.  The Court has taken

the Joint Stipulation under submission without oral argument.

For the reasons stated below, the Commissioner's decision is

1

affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on December 19, 1955.  (Administrative Record ("AR") 77, 230.)  Her husband was born October 11, 1952, and died December 19, 2000.  (AR 215.)  Plaintiff earned a high school graduation equivalency diploma.  (AR 92.)  She worked as a cashier and a communications operator.  (AR 89.)  She claims to have been disabled since August 2, 2006 (AR 216, 230), although she worked from November 1, 2007, until she was let go on August 14, 2008 (AR 89).

On August 25, 2008, Plaintiff filed applications for DIB and WIB, alleging that she was unable to work because of several medical problems, including depression, migraines, seizure disorder, and high blood pressure.  (AR 77, 88, 216.)  After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 74-76.)  It was held on September 14, 2010, at which time Plaintiff appeared with a lawyer and testified on her own behalf.  (AR 230-42.)  A vocational expert also testified.  (AR 242-47.)  On October 5, 2010, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 12-21.)  On June 24, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (AR 4-6.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the decision of the Commissioner to deny benefits.  The Court may set aside the Commissioner's decision when the ALJ's findings were based on legal error or were not supported by substantial

evidence in the record as a whole.  <u>Aukland v. Massanari</u>, 257
F.3d 1033, 1035 (9th Cir. 2001); <u>Smolen v. Chater</u>, 80 F.3d 1273,
1279 (9th Cir. 1996).  "Substantial evidence is more than a
scintilla, but less than a preponderance."  <u>Reddick v. Chater</u>,
157 F.3d 715, 720 (9th Cir. 1998).  It is "relevant evidence
which a reasonable person might accept as adequate to support a
conclusion."  <u>Id.</u>  To determine whether substantial evidence
supports a finding, the court must "'consider the record as a
whole, weighing both evidence that supports and evidence that
detracts from the [Commissioner's] conclusion.'"  <u>Aukland</u>, 257
F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th
Cir. 1993)).  If the evidence can reasonably support either
affirming or reversing that conclusion, a court may not
substitute its judgment for that of the Commissioner, and the
ALJ's decision must be upheld.  <u>Reddick</u>, 157 F.3d at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

     People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a severe physical or mental impairment
that is expected to result in death or which has lasted, or is
expected to last, for a continuous period of at least 12 months.
42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
(9th Cir. 1992).

     A.   <u>The Five-Step Evaluation Process</u>

     The Commissioner follows a five-step sequential evaluation
process in assessing whether a claimant is disabled.  20 C.F.R.
§ 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th
Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the

3

Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 404.1520(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).  If the claimant's impairment does not meet an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, the claimant is not disabled. § 404.1520(a)(4)(iv).  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established. Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not

---

[1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. <u>Id.</u>; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff engaged in substantial gainful activity as an "Operator II" for Verizon from November 1, 2007, to August 14, 2008. (AR 14-15.) Thus, she was not disabled during that period. 20 C.F.R. § 404.1520(a)(4)(i). Because there were continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity, however, the ALJ addressed those periods. (AR 15.) At step two, the ALJ found that Plaintiff had severe impairments of seizure disorder, hypertension, and migraine headaches but concluded that her mental impairment of depression did not cause more than "minimal limitation" in her ability to perform "basic mental work activities" and was therefore nonsevere. (<u>Id.</u>) The ALJ also concluded that Plaintiff's complaints of hoarding, obsessive compulsive disorder, and back pain were not supported by any objective evidence and were thus "not medically determinable." (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 17.) At step four, the ALJ found that Plaintiff had the RFC to perform "medium work"[2] except "lifting and/or

---

[2]   "Medium work" is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). A

carrying 50 pounds occasionally, 25 pounds frequently; standing and walking for 6 hours; sit for about 6 hours; occasional climbing of ladders, ropes and scaffolds; occasional stooping; and avoid even moderate exposure to hazards such as machinery and heights." (AR 18-19.) At step five, the ALJ found that Plaintiff was capable of performing her past relevant work as a telephone operator and cashier/checker and that such jobs existed in significant number in the national economy. (AR 20-21.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 21.)

**V. DISCUSSION**

Plaintiff contends the ALJ improperly (1) rejected the opinion of her treating psychiatrist, Dr. Ochuko G. Diamreyan, and therefore discounted the severity of her mental limitations (J. Stip. 4-10); and (2) found that Plaintiff was not credible as to the severity of her condition and limitations (id. at 14-19).

person capable of medium work is also capable of "light work," which involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of medium or light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time[,] occasionally lifting or carrying [small articles]," and mostly sitting but occasionally walking and standing too. § 404.1567(a).

A.  <u>Rejection of Treating Psychiatrist's Opinion</u>

1.   Applicable Law

Three types of physicians[3] may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." <u>Lester</u>, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  <u>Id.</u>

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  <u>Smolen</u>, 80 F.3d at 1285.  The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record.  <u>See</u> 20 C.F.R. § 404.1527(c)(2).  If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the record, it should be given controlling weight and should be rejected only for "clear and

---

[3]   For purposes of this memorandum opinion, the term "physician" or "doctor" includes psychologists and psychiatrists. <u>See</u> 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources"); <u>Lester</u>, 81 F.3d at 830 n.7.

convincing" reasons.  See Lester, 81 F.3d at 830;

§ 404.1527(c)(2).  When a treating physician's opinion conflicts

with other medical evidence or was not supported by clinical or

laboratory findings, the ALJ must provide only "specific and

legitimate reasons" for discounting that doctor's opinion.  Orn

v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  Factors relevant

to the evaluation of a treating physician's opinion include the

"[l]ength of the treatment relationship and the frequency of

examination" as well as the "[n]ature and extent of the treatment

relationship" between the patient and the physician.

§ 404.1527(c)(2)(i)-(ii).

           2.    Applicable Facts

     In August and September 2006, Dr. Diamreyan examined

Plaintiff.  (AR 141-45.)  On September 29, 2006 – over a year

before Plaintiff was gainfully employed full time for nine months

(AR 14)– he prepared a "Mental Disorder Questionnaire Form."  (AR

141-45.)  Dr. Diamreyan described Plaintiff's attitude and

behavior as "[a]nxious fearful restless" and stated that she had

a "depressed mood."  (AR 142.)  He described her memory as

impaired, especially her immediate memory, and stated that her

insight and judgment were mildly impaired.  (AR 142.)  Dr.

Diamreyan also explained that Plaintiff had "suicide ideation"

and indicated that she had recently attempted to overdose.  (AR

143.)  He noted her reports of hearing voices calling her name

and "talking obscenities," and other paranoia.  (AR 143.)  He

stated that Plaintiff needed help remembering things and that her

family had to help her with the activities of daily living.  (AR

143-44.)  He indicated that her concentration was impaired.  (AR

144.)  He concluded that her ability to adapt to work or work-like situations would be affected by her isolation, lack of focus, level of frustration, and poor motivation, concentration, and memory.  (AR 144.)  He diagnosed her with "[m]ajor depressive disorder single chronic with psychosis."  (AR 145.)

On November 16, 2006, Dr. John S. Woodard, a neurologist and psychiatrist, evaluated Plaintiff as a consultative examiner in response to her prior application for benefits.  (AR 146-48.)  Plaintiff complained about seizures, depression, and hypertension and indicated she was taking medication.  (AR 146.)  She reported that she had a "colloid cyst of the third ventricle" removed in 1992, and although her condition had improved, she continued to have a form of epileptic seizure.  (AR 146.)  After performing a number of tests, Dr. Woodard stated that her intellectual function was "grossly intact."  (AR 147.)  He also stated that she had no abnormality with her sensory function.  (AR 148.)  She displayed "slight" emotional tension and "emotional overreactivity."  (AR 147.)  Dr. Woodard diagnosed her with "colloid cyst, post surgical with epileptic seizures" and "slight" back strain.  (AR 147-48.)  Because of the epileptic seizures Dr. Woodard advised that Plaintiff "must not undertake any activities in which the event of a seizure would create a hazard."  (AR 148.)

On January 25, 2009, Dr. Jason H. Yang, a psychiatrist, evaluated Plaintiff as a consultative examiner.  (AR 177-80.)  Plaintiff reported that she was taking an antidepressant but was not seeing a psychiatrist or therapist and never had.  (AR 178.)  Dr. Yang assessed her level of functioning as being able to eat,

dress, and bathe independently.  (AR 179.)  He also indicated that she was able to do some household chores, run errands, shop, cook, manage money, and drive herself.  (AR 179.)  Dr. Yang's evaluation also indicated that Plaintiff

> denies suicidal or homicidal thoughts at this time.
> [Plaintiff] denies auditory or visual hallucinations, or other psychotic symptoms presently.  No delusions were elicited.

(AR 179.)  He reiterated that she was "without signs of perceptual disturbances or delusional disorders."  (AR 180.)  The evaluation further stated that her thought processes were "goal directed" and her memory and concentration were "grossly intact." (AR 179.)  Dr. Yang concluded that she should have "no problem" carrying out simple and complex tasks, and that she had the ability to tolerate the stress inherent in the work environment, maintain regular attendance, and work without supervision.  (AR 180.)

On January 28, 2009, Dr. Bryan H. To performed an independent internal-medicine evaluation of Plaintiff.  (AR 181-86.)  Dr. To indicated that based on his neurological assessment of Plaintiff, her "[m]emory appears to be intact," she had no problem with coordination, and her "sensory" was "grossly intact."  (AR 184.)  Dr. To indicated that Plaintiff stopped taking her medication for seizures and hypertension in August 2008 and was having two migraines a month and one seizure a week. (AR 184.)

On February 25, 2009, Dr. Henry Amado completed a Psychiatric Review Technique form.  (AR 196-209.)  Dr. Amado

10

indicated that insufficient evidence existed that Plaintiff had psychological or behavioral abnormalities, including memory impairment.  (AR 200.)  Dr. Amado also indicated that there was insufficient evidence of psychotic disorders.  (AR 200-01.)  Dr. Amado found that Plaintiff had a depressive affect disorder (AR 199, 202) but concluded that the impairment was not severe (AR 199, 209).  In making this determination, Dr. Amado credited Dr. Yang's evaluation and noted that "[t]here is some prior psych-related MER [medical evidence of record] in the paper folder, suggesting a more severe condition in the past, but this MER precedes the current AOD [alleged onset date]."  (AR 209.)

> 3.   Analysis

In concluding that Plaintiff's medically determinable mental impairment of depressive disorder was not severe the ALJ attributed "little weight" to Dr. Diamreyan's mental disorder questionnaire form.  The ALJ articulated three specific, legitimate reasons for this determination.  First, the ALJ properly considered the brief duration of Plaintiff's mental-health treatment by Dr. Diamreyan.  (AR 16.)  The ALJ noted that Dr. Diamreyan's questionnaire was completed after only a month of treatment.  (AR 16.)  According to the questionnaire, Plaintiff was examined for the first time on August 24, 2006, and her last examination was September 29, 2006.  (AR 145.)  The frequency of visits was every two weeks.  (AR 145.)  Under that time frame, Dr. Diamreyan could have examined Plaintiff two or three times at most.  The brief duration of plaintiff's psychiatric treatment undermined Dr. Diamreyan's assessment.  The ALJ was entitled to consider the length of treatment and frequency of examination in

assessing the doctor's opinion.  20 C.F.R. § 404.1527(c)(2)(i)-(ii); see Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.) (as amended Aug. 9, 2001); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008).

The ALJ's second reason for attributing "little weight" to Dr. Diamreyan's mental disorder questionnaire form was that he indicated that Plaintiff had a memory problem and diagnosed her with psychosis (AR 142, 145), yet none of the consultative examiners nor Plaintiff's general practitioner, Dr. Quion, indicated that she had memory problems, and Plaintiff never manifested any signs of psychosis to the consultative examiners or Dr. Quion.[4]  (AR 16.)  Rather, the consultative examiners concluded that Plaintiff denied psychotic symptoms and that her memory was intact.  (AR 179, 184, 200-01.)  The evaluations further stated that her thought processes "are goal directed" and her memory, concentration, and sensory are "grossly intact."  (AR 179, 184.)  Dr. Quion's treatment notes also do not reflect any signs or symptoms of psychosis.  (AR 150-74.)  The ALJ was also entitled to assign more weight to these examinations because they were conducted years after Dr. Diamreyan filled out the mental disorder questionnaire, which predated Plaintiff's full-time

---

[4]    The ALJ references three consultative examiners, but the citations provided in the ALJ's decision are to Dr. Yang's consultative psychiatric evaluation (AR 177-80), Dr. To's consultative internal-medicine evaluation (AR 181-86), and medical records provided by Dr. Quion, a general practitioner who treated Plaintiff on various occasions (AR 149-74).  The ALJ possibly intended to cite to Dr. Amado's Psychiatric Review Technique form (AR 196-209) as the third consultative examiner's report.

job.[5]  See Carmickle, 533 F.3d at 1165 (medical opinions that predate employment are of limited relevance).

The ALJ's final reason for attributing less weight to Dr. Diamreyan was that there were no treatment notes in the record from the doctor of any kind, much less those recording treatment or complaints of psychosis.  (AR 16.)  Outside of Dr. Diamreyan's 2006 questionnaire, there was no other evidence at all of memory problems or psychosis.  The ALJ could properly rely on the lack of treatment notes in discounting Dr. Diamreyan's questionnaire. See Lester, 81 F.3d at 830; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ properly rejected doctor's opinion when no objective evidence, including treatment notes, supported diagnosis).

Plaintiff faults the ALJ for relying on the lack of treatment notes, claiming that it was the ALJ's responsibility to develop the record; Plaintiff contends that the ALJ should have asked her or her attorney, and they "would have made every effort to obtain these records from Dr. Diamreyan."  (J. Stip. at 4-5.) The ALJ has an independent duty to develop a record in order to make a fair determination as to disability.  Tonapetyan, 242 F.3d at 1150.  But it is the plaintiff's duty to prove that she is disabled.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citing 42 U.S.C. § 423(d)(5) (Supp. 2001), and Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)); see also 20 C.F.R.

---

[5]    Although not mentioned by the ALJ (perhaps because it was prepared for a prior application for benefits), Dr. Woodard's evaluation, conducted shortly after Dr. Diamreyan evaluated Plaintiff, further undermines Dr. Diamreyan's questionnaire. Plaintiff did not mention psychotic symptoms or memory problems to Dr. Woodard.  (AR 146-48.)

§ 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled."). An ALJ's duty to develop the record further is triggered only when the record contains ambiguous evidence or is inadequate to allow for proper evaluation of the evidence. <u>Mayes</u>, 276 F.3d at 459-60 (citing <u>Tonapetyan</u>, 242 F.3d at 1150). Here, the evidence was not ambiguous and the record was not inadequate. Indeed, during the hearing the ALJ asked Plaintiff's counsel if he had anything to add to the record, and he responded, "I believe it is complete, Your Honor." (AR 229.) Moreover, after the ALJ's denial of benefits Plaintiff could have, but did not, submit any treatment notes from Dr. Diamreyan to the Appeals Council for review. (AR 4-6.)

Plaintiff points to two progress reports from Dr. Quion, from 2008 and 2009, indicating that Dr. Quion assessed her as suffering "depression with anxiety" and prescribed her medication. (J. Stip. 6; AR 211, 213.) But the ALJ rejected Dr. Diamreyan's questionnaire not because he disagreed with its depression and anxiety diagnosis but rather for the reasons outlined above. (AR 16.) Indeed, the ALJ acknowledged that Plaintiff had a "medically determinable impairment of depressive disorder" but concluded that it did not cause more than "minimal limitation" in Plaintiff's ability to perform "basic mental work activities." (AR 15.) Nothing in the record contradicts that finding.

Seemingly acknowledging that Dr. Diamreyan's questionnaire was insufficient to support her disability claim as she submitted

14

it, Plaintiff next faults the Commissioner and the ALJ for not asking her to amend the alleged onset date from August 2, 2006, to August 15, 2008, the date, she testified, when she could no longer perform any work-related activity.  (J. Stip. at 6-9.) Plaintiff cites no authority for the proposition that the ALJ or the Commissioner had a duty to inform her that she should amend her onset date.  Moreover, as discussed above, there was no medical evidence supporting memory or psychosis problems even after her substantial gainful employment for Verizon.  See Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001) (Commissioner did not err in denying requests to amend alleged onset date because counsel did not inform ALJ before hearing of any change in alleged onset date and record did not support alleged onset date).

The ALJ was entitled to credit the findings of the consultative doctors because they were supported by their independent examination of Plaintiff and thus constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Diamreyan's much older opinion.  See Tonapetyan, 242 F.3d at 1149.  The ALJ provided three specific and legitimate reasons for rejecting Dr. Diamreyan's opinion.  Accordingly, Plaintiff's contentions do not warrant remand.[6]

---

[6]    Plaintiff contends that Dr. Yang "found that Plaintiff would be limited to following 'simple one- and two-part instructions'" and therefore her depressive disorder impairment was "severe" even discounting Dr. Diamreyan's opinion.  (J. Stip. at 5.)  Plaintiff misstates Dr. Yang's comment.  He never said she was "limited to" such tasks.  Rather, Dr. Yang indicated that Plaintiff could "carry[] out simple and complex tasks" and should have "no problem" performing work duties.  (AR 180.)

B.    Adverse Credibility Determination

1.    Applicable Law

An ALJ's assessment of credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 584 (9th Cir.), modified on reh'g, 859 F.2d 1396 (9th Cir. 1988). Absent affirmative evidence of malingering, the ALJ must give "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834.  As long as the ultimate credibility finding is supported by substantial evidence in the record, the ALJ's decision must be upheld, even if he relied on some improper reasons in support of the finding. See Carmickle, 533 F.3d at 1162-63.  If the ALJ's credibility finding is supported by substantial evidence, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

2.    Analysis

Here, the ALJ made four specific findings in support of his adverse credibility determination regarding the severity of Plaintiff's impairments and the limitations they allegedly caused. (AR 19-20.)  First, the ALJ concluded that her statement that her condition worsened because she was not able to afford medication was inconsistent with her ability to accumulate and care for up to 19 cats. (AR 20.)  Second, the ALJ doubted

16

Plaintiff's allegations that she had seizures "almost daily"[7] and that it took hours to recover from a seizure episode. (AR 20.) The ALJ stated that there was no objective medical evidence to support this. (AR 20.) Third, the ALJ concluded that Plaintiff's credibility was further diminished by her lack of compliance with her recommended treatment, citing evidence that she consistently had sub-therapeutic levels of anti-seizure medication in her blood. (AR 20.) Fourth, the ALJ found her credibility further reduced by evidence of her daily living activities. (AR 20.) Specifically, the ALJ found that statements made by Plaintiff and her daughter that Plaintiff was driving her son to and from work five days a week was inherently inconsistent with her allegations regarding frequent seizures. (AR 20.)

Plaintiff first attacks the ALJ's credibility finding by arguing that she had 16 cats, not 19, and noting that the fact that she eventually had to give up the cats is simply confirmation that she "had no money to pay for anything, her cats, her medications, et cetera." (J. Stip. at 15.)

Plaintiff testified at the hearing that she "ended up with nineteen cats." (AR 235, 241.) Although she stated in a February 16, 2010 disability report that she had 16 cats (AR 130), the precise number of cats is immaterial to the ALJ's point in doubting her credibility. The ALJ's credibility finding was based on her ability to pay to care for a large number of cats

---

[7]     Plaintiff has provided varying responses regarding the frequency of her seizures, ranging from once a week (January 2009; AR 184) to "3-4 times a week" (October 2008; AR 119) to "two or three times a day" (September 2010; AR 233).

17

while claiming she could not afford medication for herself. (AR 20.)  Moreover, although Plaintiff claims otherwise, there is support in the record that she had the cats at the same time she claimed to be unable to afford her medicine.  In the February 16, 2010 disability report she indicated that she had been hoarding cats, and that the hoarding, along with other symptoms, began in 2008. (AR 127, 130.)  Thus, she cared for the cats from 2008 to some time before the disability report (AR 127-31),[8] within the time period she claims she was disabled and could not afford medication.  Furthermore, at least one function report indicates she was caring for her cats in October 2008, at the same time she was suffering from seizures but not taking her medications because she allegedly could not afford them. (AR 106-07, 114-15, 120.)  The ALJ could properly consider inconsistencies between Plaintiff's testimony and her daily activities and conduct, and the first ground of the adverse credibility determination was supported by substantial evidence. See Thomas, 278 F.3d at 958-59; Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1196-97 (9th Cir. 2004) (adverse credibility determination supported in part by conflict between claimant's allegation he could not return to work because of pain and testimony that he tended to his animals, among other activities).[9]

---

[8]    In the February 16, 2010 disability report she indicates she "had" cats. (AR 130.)  At the hearing she testified that she lost her home twice and had to give up her cats. (AR 239.)

[9]    Even if the timing of Plaintiff's possession of the cats did not significantly coincide with the period she claimed she couldn't afford her medications, any error would be harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless.")  At

1   Plaintiff also challenges the ALJ's determination that her
2   claim that it takes her hours to recover after a seizure was not
3   supported by objective evidence in the record.  (J. Stip. at 15-
4   16.)  Plaintiff argues that there is "no evidence" in the record
5   contradicting her testimony at the hearing that her recovery
6   period was only about 30 minutes.  (J. Stip. at 15-16; AR 240.)
7   But Plaintiff indicated on her October 17, 2008 seizure
8   questionnaire that her recovery period after seizures was two
9   hours.  (AR 119.)  The ALJ could properly consider these
10  inconsistencies as affecting Plaintiff's credibility.  See
11  Thomas, 278 F.3d at 958-59.  The ALJ's second reason was
12  supported by substantial evidence.  Id. at 959.

13  Plaintiff further claims that it was improper for the ALJ to
14  rely on Plaintiff's lack of full compliance with her treatment
15  recommendations.  (J. Stip. at 16-17.)  Specifically, Plaintiff
16  contends that it was improper for the ALJ to consider her sub-
17  therapeutic levels of anti-seizure medication because "these
18  medications are metabolized by every person differently and
19  frequently adjustments are needed to get the levels in the proper
20  range."  (J. Stip. at 16.)  Plaintiff's sub-therapeutic levels
21  (AR 159, 161, 163, 167, 187), spanning October 25, 2005, to
22  January 28, 2009, appear not to be due to her metabolism rate but
23  to her failure to take her epilepsy seizure medication as
24  prescribed (AR 175, 184, 188, 233).  See SSR 87-6, 1987 WL
25  109184, at *3 (1987) ("Unless convincing evidence is provided

27  the hearing Plaintiff testified that she kept three storage lockers
28  (AR 241), the cost of which would surely cover at least some of her
    medications.

19

that subtherapeutic blood drug levels are due to abnormal absorption or metabolism, and the prescribed drug dosage is not itself inadequate, the conclusion should follow that the individual is not complying with the treatment regimen."). Plaintiff has not presented any evidence, much less "convincing" evidence, that she has a lower metabolism rate.  Thus, the ALJ could properly rely on her lack of full compliance with treatment recommendations.[10]  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ partially discredited pain testimony based on lack of consistent treatment).

Finally, Plaintiff challenges the ALJ's finding regarding the inconsistencies in her daily activities.  (J. Stip. at 17-19.)  The ALJ cited statements by Plaintiff and her daughter that Plaintiff drives her son to and from work.  (AR 20, 106, 114.) The ALJ found that this was inherently inconsistent with the alleged severity of Plaintiff's seizures.  (AR 20.)  Plaintiff contends that the ALJ's reasoning was improper because nothing in the record showed how far she had to drive and how long it took to get there.  (J. Stip. at 17.)  Regardless of distance, her claim that she had seizures two to three times a day, causing her to have "a severe tremor" and bite her tongue (AR 232-33), was inconsistent with safely driving her son to and from work every day (AR 106, 114), as Dr. Woodard had advised several years earlier.  The ALJ could properly consider these inconsistencies. See Thomas, 278 F.3d at 958-59.

---

[10]     Plaintiff's contention that she was taking her medication and that it simply did not metabolize normally is inconsistent with her argument elsewhere that she did not take her medication at all after August 2008 because she could not afford it.

The Court is mindful that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Regennitter v. Comm'r, Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotation marks and citations omitted). Plaintiffs also cannot be faulted for not having taken medication they could not afford. Orn, 495 F.3d at 638. But as the ALJ noted, Plaintiff has never been credibly diagnosed with any mental health disorder other than mild depression, and her claims of poverty were belied by some of her other expenditures. Even if the ALJ erred in basing his credibility determination on those two factors, his other stated reasons fully support his finding. Thus, this Court must uphold it. Carmickle, 533 F.3d at 1162-63.

The ALJ gave specific, "clear and convincing" reasons for rejecting Plaintiff's testimony. Lester, 81 F.3d at 834. Because the ALJ's credibility finding was supported by substantial evidence in the record, this Court will not "second-guess" the ALJ's finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Thus, Plaintiff's contentions do not warrant remand.

**VI.   CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[11] IT IS ORDERED that judgment be entered

---

[11]   This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

AFFIRMING the decision of the Commissioner and dismissing this
action with prejudice.   IT IS FURTHER ORDERED that the Clerk
serve copies of this Order and the Judgment on counsel for both
parties.

DATED:   June 1, 2012

_____
JEAN P. ROSENBLUTH
U.S. MAGISTRATE JUDGE

22